REQUESTED BY: M. Berri Balka State Tax Commissioner
You have requested our opinion concerning whether a for-profit corporation created and owned by the Winnebago Indian Tribe of Nebraska is immune from taxation by the State of Nebraska based on activities conducted by the corporation both on and off the Winnebago Tribe's Reservation.
I. FACTS
The corporation, Ho-Chunk, Inc., [the "Corporation" or "Ho-Chunk"], is wholly-owned by the Winnebago Tribe of Nebraska [the "Tribe"]. The Tribe is a federally-recognized Indian tribe organized and operating under a Constitution approved by the Secretary of the Interior pursuant to the Indian Reorganization Act of 1934, 25 U.S.C. § 476. The Tribe's governing body, as provided in its Constitution, is its Tribal Council. The Tribal Council consists of nine members elected by the eligible adult members of the Tribe. The Tribe occupies reservation land in Nebraska and Iowa constituting the Winnebago Indian Reservation [the "Reservation"].
In September 1994, the Tribal Council authorized the creation of Ho-Chunk. Specifically, the Tribal Council: (1) adopted the Winnebago Tribe of Nebraska Business Corporation Code [the "Code"], providing for the incorporation of business corporations under the Tribe's law, including corporations wholly-owned by the Tribe; (2) determined that it was in the best interests of the Tribe to carry out its economic development activities through a corporation wholly-owned by the Tribe; and (3) incorporated Ho-Chunk for this purpose. Ho-Chunk is a resident of and maintains its corporate headquarters on the Reservation.
Ho-Chunk has nine shares of outstanding stock owned by the Tribe. Each member of the Tribal Council has the right to one vote on any Ho-Chunk matter presented for a shareholder vote. All beneficial interests or rights in Ho-Chunk other than voting rights are held by and for the Tribe. The Tribal Council has authority to direct that Ho-Chunk distribute all or any portion of its net income to the Tribe at any time.
The Board of Directors of Ho-Chunk consists of five members selected by the Tribal Council, including two members required to be current members of the Tribal Council, one other tribal member, and two members experienced in business not required to be members of the Tribe (but who always have been members of the Tribe). The directors, who serve for staggered three-year terms, may be removed by the Tribal Council at any time with or without cause.
In the Code and in the Articles of Incorporation of Ho-Chunk, the Tribe has sought to confer on Ho-Chunk all of the Tribe's rights, privileges, and immunities concerning federal, state, or local taxes, regulations, and jurisdiction, as well as sovereign immunity from suit, to the same extent that the Tribe would have such rights, privileges, and immunities, as well as sovereign immunity from suit, if it engaged in the activities undertaken by Ho-Chunk.
II. QUESTIONS PRESENTED
Based on the foregoing, you present two questions for our consideration. First, you ask whether Ho-Chunk, based on these facts, should be accorded the same immunity from Nebraska taxation accorded to the Tribe itself when the Corporation conducts activities on the reservation. Second, if Ho-Chunk is immune from Nebraska taxation resulting from its activities on the Reservation, you ask whether it is also immune from Nebraska taxation based on its activities conducted in other parts of the state off the reservation.
III. ANALYSIS
A. Taxation of On-Reservation Activities.
Generally, "[t]he federal purposes implicit in setting aside Indian country for the residence of a tribe — self-government and economic support — preempt state jurisdiction to tax Indians or Tribes therein, unless Congress authorizes the tax." F. Cohen, Handbook of Federal Indian Law, 406 (1982 ed.). "[W]hen a State attempts to levy a tax directly on an Indian tribe or its members inside Indian country, rather than on non-Indians, [the Court has] employed, instead of a balancing inquiry, `a more categorical approach: `[A]bsent cession of jurisdiction or other federal statutes permitting it', [the Court has] held, a State is without power to tax reservation lands and reservation Indians." Oklahoma Tax Comm'n v. ChickasawNation, ___ U.S. ___, ___, 115 S. Ct. 2214, 2220-21 (1005) (quoting County of Yakima v. Confederated Tribes and Bands ofYakima Nation, 502 U.S. 251, 258, 112 S. Ct. 683, 688 (1992) (citation omitted)). Applying this "categorical approach", the U.S. Supreme Court has "held unenforceable a number of state taxes whose legal incidence rested on a tribe or on tribal members inside Indian country." Oklahoma Tax Comm'n v. Chickasaw Nation, ___ U.S. at ___, 114 S. Ct. at 2220. See, e.g., Bryan v. ItascaCounty, 426 U.S. 373 (1976) (personal property tax); McClanahanv. Arizona State Tax Comm'n, 411 U.S. 164 (1973) (state net income tax).
Consistent with these precedents, the Department has recognized that Indians residing on Nebraska Indian Reservations, and Indian Tribes, are immune from various state taxes on activities or transactions conducted within Reservation lands.See, e.g., NDOR Information Guide "Nebraska Taxation of Reservation Indians" (rev. June, 1996); NDOR Rev. Ruling 99-76-4 (Indian Tribal Council shall receive same state tax treatment as a Reservation Indian). In the instant case, however, the issue is the immunity from state taxation of Ho-Chunk, a corporation chartered under tribal law. The Department has taken the position that income of a corporation is subject to Nebraska franchise or income tax, even if the shareholders of the corporation include reservation Indians. NDOR Rev. Ruling 24-76-3 (Oct. 1, 1976). The Department's position is based on the generally recognized principle that a corporation is a legal entity separate and distinct from its shareholders. Id.
As one leading commentator on Indian law has stated, the question of "[w]hether a corporation should have the same jurisdictional status as an Indian under some circumstances has not been authoritatively determined." F. Cohen, Handbook ofFederal Indian Law, 438 (1982 ed.). Professor Cohen notes that tribal corporations formed under Section 17 of the Indian Reorganization Act, and tribal enterprises which are "arms of the tribal government", have been "treated identically with tribes for jurisdictional purposes." Id. He suggests that, "[w]hen a tribe charters a corporation, the status may depend on its ownership and purposes." Id. While Professor Cohen states it is "uncertain" whether a tribe may confer its immunity from taxation on a tribally-chartered corporation, he suggests that, "[i]f the corporation is tribally owned and is established to carry out a governmental purpose, the entity would seem little different from a branch of the tribal government itself." Id. at 439 n. 11.
In a prior opinion, we concluded that the tangible personal property of a tribally-chartered corporation doing business on reservation or Indian lands was not subject to personal property taxation. Op. Att'y Gen. No. 111 (July 10, 1985). The corporation was chartered under the authority of the Corporate Charter, Constitution, and Bylaws of the Winnebago Tribe of Nebraska. The President and Chairman of the Board of Directors were enrolled members of the Tribe, and a majority of the stock of the corporation was owned by Indians. While we recognized that there were no definitive cases addressing state or local taxation of property of tribally-chartered corporations, we concluded that the property of the corporation located on the reservation was likely immune from property taxation. We noted the fact that the corporation was chartered under tribal law, not state law, "seem[ed] to strengthen the argument for immunity." The opinion concluded that recognizing immunity was "consistent with the federal policy of encouraging successful Indian business enterprises on reservations to foster the tribe's economic development." Id. at 4.
While there concededly are no cases directly holding that a tribal corporation such as Ho-Chunk is immune from state taxation based on activities and transactions occurring in Indian country, we conclude that, based on the facts presented, the Department should determine that Ho-Chunk is not subject to taxation by the State based on its on-reservation activities. We reach this conclusion for two reasons.
First, we note that, on several occasions, courts have held that states taxes imposed on non-Indian parties based on dealings with Indians on reservations were impermissible, even though such dealings were with tribal enterprises or organizations, not the tribe itself. See, e.g., Ramah Navajo School Bd., Inc. v. Bureauof Revenue of New Mexico, 458 U.S. 832 (1982) (State could not impose gross receipts tax on revenues of non-Indian contractor from its contract with school board, which constituted a "tribal organization", to build Indian school on reservation); CentralMachinery Co. v. Arizona State Tax Comm'n, 448 U.S. 160 (1980) (State gross receipts tax on sale of farm equipment by non-Indian company on reservation was preempted by federal statute, even though sale was made to a tribal enterprise rather than the tribe itself). The Court in Central States, referencing the statement in Mescalero Apache Tribe v. Jones, 411 U.S. 145, 157 n. 13 (1973) that "the question of tax immunity cannot be made to turn on the particular form in which the Tribe chooses to conduct its business", stated it was "irrelevant" that the on-reservation sale on which the Arizona tax was based "was made to a tribal enterprise rather than to the Tribe itself." 448 U.S. at 163
n. 3). Ho-Chunk, while apparently organized as a for-profit corporation, is akin to a tribal organization or enterprise. This conclusion is bolstered by the following: (1) Ho-Chunk was formed by the Tribal Council to carry out the Tribe's economic development activities, (2) the Tribe owns all shares of Ho-Chunk's outstanding stock; (3) all beneficial interests or rights in Ho-Chunk (other than voting rights) are held by and for the Tribe; and (4) the Tribal Council has authority to direct that Ho-Chunk distribute all or any portion of its net income to the Tribe at any time. Based on the facts presented to us, the dominant theme and purpose of Ho-Chunk is to conduct business activities on behalf of and for the benefit of the Tribe.
Second, we note that the Supreme Court has adopted a "categorical approach" with respect to state attempts to levy taxes on Indian tribes or their members inside Indian country, denying state jurisdiction to impose taxes "`[a]bsent cession of jurisdiction or other federal statutes permitting it,' . . . ."County of Yakima v. Confederated Tribes and Bands of YakimaNation, 502 U.S. at 258 (quoting Mescalero Apache Tribe v. Jones,411 U.S. 145, 148 (1973). Given the organization, composition, and purpose of Ho-Chunk, its proclaimed status as an entity formed by the Tribe to aid the Tribe in carrying out its economic development activities, and the absence of any federal statute permitting state taxation of its activities on the Reservation, we conclude that the "categorical approach" followed by the Court likely would preclude state taxation of Ho-Chunk's on-reservation activities or transactions.
B. Taxation of Off-Reservation Activities.
As to the question of the State's imposition of taxes based on activities and transactions of Ho-Chunk occurring off the Reservation, however, we reach a different conclusion. In that regard, it has been recognized that "[s]tate taxes have . . . been validly imposed on tribal business activities outside tribal Indian country absent conflict with a federal law or treaty." F. Cohen, Handbook of Federal Indian Law, 430 (1982 ed.). InMescalero Apache Tribe v. Jones, 411 U.S. 145 (1973), the Court sustained state jurisdiction to impose a nondiscriminatory gross receipts tax (based on gross income) of a tribal ski resort located outside the Tribe's reservation. In an oft-quoted passage from Mescalero, the Court recognized a distinction between state jurisdiction over activities of Indian tribes and their members on reservation lands, and activities conducted outside the reservation:
 [I]n the special area of state taxation, absent cession of jurisdiction or other federal statutes permitting it, there has been no satisfactory authority for taxing Indian reservation lands or Indian income from activities carried on within the boundaries of the reservation, . . . .
* * *
 But tribal activities conducted outside the reservation present different considerations. . . . Absent express federal law to the contrary, Indians going beyond reservation boundaries have generally been held subject to non-discriminatory state law otherwise applicable to all citizens of the State. . . . . That principle is as relevant to a State's tax laws as it is to state criminal laws. . . . .
Id. at 148-49 (citations omitted) (emphasis added).
Mescalero supports the State's jurisdiction to impose nondiscriminatory taxes on Ho-Chunk's activities and transactions conducted off the Reservation. As noted by Professor Cohen, "[t]he reasoning of the decision seems to apply to other state business and consumption taxes, such as taxes on employers, sales, inventory, motor fuels, and the like." F. Cohen, Handbookof Federal Indian Law, 430. To the extent that Ho-Chunk conducts business activities outside the Reservation, it is subject to nondiscriminatory taxes imposed by the State.
Very truly yours,
 DON STENBERG Attorney General
 L. Jay Bartel Assistant Attorney General
APPROVED BY:
Don Stenberg
Attorney General